Jones *v.* Thompson.

## JONES *v.* THOMPSON *et al.*

J. filed his bill in the District Court against T., alleging a partnership between them, and praying for an account of the partnership property.  Subsequently, J. filed a petition in the same Court, setting forth the bill, and also that L. T. B. and H. B. had obtained judgment against T. the defendant, and that execution had issued on the judgment, and was levied on the partnership property of the plaintiff and defendant, and that the Sheriff was about to sell the property.  The petition prayed that L. T. B. and H. B. might be made parties, and that an injunction might issue against L. T. B. and H. B. and the Sheriff; *Held :* That on the appeal of the case to this Court, it does not lie in the mouth of J. and T. to say that L. T. B. and H. B. are not parties to the suit, and have no right of appeal.

The interest of one partner in the partnership chattels, is the subject of levy and sale by the Sheriff, on an execution against one of the partners.

But the Sheriff can only seize and sell the interest and right of the judgment partner therein, subject to the prior rights and liens of the other partners and the joint creditors therein.

In such case, the decree should not order a private sale of the firm property.  The selling of cattle, sheep, etc., at private sale, is dangerous as a precedent, and liable to great abuse in practice.

Appeal from the Third District, County of Monterey.

The facts as disclosed by the opinion of the Court, are as follows :

This bill was filed in the District Court of the Second District, on the fourth day of April, 1856.  The bill charges a partnership between the plaintiff and defendant, and prays an account.  Thompson was

the only defendant to the bill, and filed his answer denying the allegations of the bill.    Neither the bill nor answer is verified.

Shortly after this time, plaintiff filed a petition in the District Court, setting forth the complaint, and also that Lewis T. Burton and Harvey B. Blake had obtained judgment in the First District Court, against A. B. Thompson, the defendant, and that execution had issued on the judgment, and been levied on certain cattle, the property of plaintiff and defendant Thompson, and that the Sheriff was threatening to sell the property by virtue of the execution.    The petition prayed that the plaintiffs in the execution, Burton and Blake, might be made parties to that proceeding, and that an injunction might be issued against Burton and Blake and the Sheriff of Santa Barbara county, enjoining and restraining them, their agents and attorneys, from proceeding to sell or otherwise dispose of any of the cattle, horses and other property levied on.    On the twenty-sixth of June, 1856, an . injunction was granted according to the prayer of the petition, by the Judge of the Second District.    On the twenty-seventh June, Burton and Blake appeared in Court and asked for a dissolution of the injunction, and that their names might be stricken from the record.    The motion for the dissolution of the injunction was denied.    Afterwards, on motion of the plaintiff's attorney, the cause was removed to the Third Judicial District, on the ground of incapacity of the Judge, he being related to the plaintiff.

On the twenty-sixth day of April, 1858, the Court entered a final decree, by which a receiver was appointed, and ordered to take immediate possession of the property, and to sell so much of it at private sale as would bring the sum of $7,370, and costs of suit and charges of the receiver, and divide the remaining property and cattle on the island between Jones and Thompson, and ordering the injunction to remain in full force and effect against Burton and Blake and the Sheriff.

*Thompson, Irving & Pate* for Appellants.

1. The first point we present to the consideration of the Court is, that the injunction in this case was irregularly issued, and Burton and Blake improperly made parties to this suit.

Jones v. Thompson.

The statute provides in what manner suits shall be commenced, and how injuctions shall issue.    Practice Act, section 22, provides " that an action shall be commenced by filing a complaint and issuing a summons thereon."    See sec. 113 Prac. Act.

In order to make Lewis T. Burton and Harvey B. Blake parties to this suit, there should have been filed a complaint verified by John C. Jones, or some one in his behalf, against Burton and Blake, and a summons issued thereon.    This is the only mode known to our practice. Prac. Act, sec. 114.

In this case the only defendant, Thompson, had answered previously to the filing of the petition for the injunction, and the record nowhere shows any notice, or an order to show cause upon any of these defendants, before the issuing of the injunction.

But it shows conclusively that they did not have notice, nor was an order obtained to show cause, because the petition for the injunction was filed on the twenty-fourth day of June, 1856, and the injunction was issued on the twenty-fifth day of June, 1856.

The law requires that a notice of five days shall be given in all cases of motions, etc., unless the Judge prescribe a shorter period. The record here does not show that the Judge entered an order shortening the time, therefore the granting of the injunction was improper under this section of the statute.

2. Burton and Blake not being parties, no injunction could issue against them.    Daniels' Ch. Practice, 3 vol. p. 1834–1837 ; Walker v. Deveraux, 4 Paige, 229 : Fellows v. Fellows, 4 John. Ch. R. 25 ; Waller v. Harris, 7 Paige, 167.

3. The next point to which we call the attention of the Court is, that admitting for the sake of argument that Burton and Blake were regularly made parties to this suit, then we say, that a Court of Equity will not interfere to stop an execution at law, in cases of this character, until the partnership accounts have been taken.    Sitler & Johnson v. Walker, 1 Freeman Ch., Kentucky, 77 ; Brewster v. Hanmet, 4 Conn. 450.

The interest of each partner is his share of the surplus, subject to all the partnership accounts, and that interest is liable to the executions of a creditor.    Dutton v. Morrison, 17 Ves. Jur., 1 Rose, 213.

Nor in ordinary cases will the Court out of which the execution issues, interfere on motion.    Phillips *v.* Cook, 24 Wend. 390, 401, 608.

So the rule seems to be well established, that a Court of Equity will not interfere to stop an execution at law.

And the only instances in which a Court of Equity ever interferes with an execution at law, is where the property is of a peculiar value, and the party could not be compensated in damages by the verdict of a jury.    Allen *v.* Freeland, 3 Rand. 173.

The property levied on in this case is not of that peculiar value, so that the owner can not be compensated in damages by the verdict of the jury.

He has three distinct legal remedies ; he could bring an action at law, to recover the property, against the purchaser, or sue the Sheriff for damages for the taking and detaining thereof, and an action on the indemnity bond.

The question seems to be whether a partner's interest in partnership effects, can be levied upon at all under a common law execution. That it can, principle, policy and authority agree : the first, because the partner has a legal interest in possession, which is leviable estate ; the second, because otherwise a debtor by merely entering into a partnership might screen all his property from his creditors, and the third, by a series of cases and a continued practice from the earliest times.    If an execution can be sustained at all, there is no mode in which it can be done but by a seizure of the goods and a levy and sale of the legal interest.

The respondents may say in this case, that Burton and Blake not being parties to the record, have no right to appeal.    Should this point be raised, we will merely refer the Court to the case of Adams *v.* Woods, (8 Cal. 306, and 9 Cal. page 616) in which the Court says : " a party aggrieved by a judgment, has a right of appeal, although he is not a party to the record."

*Saunders & Brent* for Respondent Jones.

1. The appeal should be dismissed as not being taken by a party to the record.

Jones v. Thompson.

After the suit of Jones v. Thompson was commenced, the plaintiff, Jones, filed a petition for an injunction against Burton and Blake.

This petition is not entitled in this action, and should not be regarded as a part thereof; it contains by itself a distinct cause of action, and makes new parties, and is in all respects a new cause, which is now pending, and should be regarded as distinct and separate from the one at bar. It cannot be considered as a part of the proceedings in this action, because the plaintiff did not so ask it, because it is independent of it, because in order to be a part it will be necessary to regard the petition as a supplemental bill, which it does not purport to be, and for the filing of which no permission of the Court was asked or granted. Upon its face the injunction proceedings constitute a separate case by itself, and should not be mixed or confounded with the present suit.

2. But if Burton and Blake are to be regarded as parties to this record, then they are to be subject to all the responsibilities that ordinarily attach to parties to a litigation.

The final decree was entered in April, but they only appealed four months after. They have made no motion for a new trial, nor have they prepared, nor has the Judge certified to, any statement to be used on appeal; so that the only case they are entitled to bring into this Court, is that made by the judgment roll alone.

3. The appellants claim that a Court of Equity will not interfere, at the instance of one partner, to stop a sale under an execution at law, issued by an individual creditor of the other partner, and levied on partnership property.

As applied to the present case, the claim of appellants is this: that notwithstanding Jones had gone into a Court of Equity, seeking an account and a dissolution of a partnership, consisting of horses, cattle and sheep, between himself and Thompson, and claiming that the partnership was indebted to him in the sum of $60,000, yet the appellants, Burton and Blake, two months subsequent to the commencement of this suit, and after it was at issue, had a right to levy upon this common property for a separate debt of Thompson, and authorize the Sheriff to sell the same at public auction and deliver it to purchasers.

When a Sheriff, upon an execution against one partner, levies on and sells partnership property, he has a right to take possession of the

whole property, and deliver it over to the purchaser or purchasers. Phillips v. Cook, 24 Wend. 389, 407–8; Walsh v. Adams, 3 Denio, 127.

So that the claim of appellants amounts to this: that Burton and Blake could have forced all these horses, cattle and sheep to sale by the Sheriff, could have required the Sheriff to deliver the same to forty or fifty purchasers, as the case may be, and thus require Jones, who had already commenced his action against Thompson, and who had a prior lien on the property, to pursue his rights by suing each one of the vendees of the Sheriff.

We submit that partners have an equitable lien upon partnership property for partnership debts, which lien is prior to the claim of the separate creditors of the individual partners. Story's Eq., sec. 675; Greenwood v. Brodhead, 8 Barb. S. C. 596.

The interest of a partner in a firm can be attached at the suit of his separate creditors, and can be sold by the Sheriff unless enjoined, but this attachment is subject to the paramount claims of the partnership creditors, who, by a subsequent levy, can defeat the prior attachment.

All the authorities agree on this point. Price v. Jackson, 6 Mass. 242; Story on Part., sec. 263; Phillips v. Cook, 24 Wend. 389; Wilder v. Keeler, 3 Paige, 167.

But our Supreme Court has affirmed the principle that partnership creditors are entitled to a preference in the distribution of joint property, over separate creditors of an individual partner. Chase v. Steel, 9 Cal. 66; see Collyer on Part., secs. 825–6–7–8–9–30; also, sec. 831; 1 Madd. Ch. 131–6; 1 Eden on Injunctions, 53–6; Gow on Part., ch. 4, sec. 1, p. 252; Taylor v. Field, 4 Vesey, 396; Taylor v. Field, 15 Vesey, 559, note; Skip v. Sherwood, 2 Swanst. 586.

The weight of American authority is the same way. Story on Part., sec. 264; Witter v. Richards, 10 Conn. 37; Moore v. Sample, 3 Ala. R. N. 319; 1 Green, N. I. Ch. R. 163; Place v. Sweetser, 16 Ohio, 142; 1 Story Eq., sec. 628.

In opposition to the unbroken current of English authority, and the influence of the American decisions, we have only two cases in conflict. Moody v. Payne, (2 John. Ch. R. 548). Here Chancellor

Jones *v.* Thompson.

Kent refused to issue an injunction to restrain a sale under an execution issued at the suit of a separate creditor of a partner, and levied on the partnership property.

He based his refusal upon the ground that it would produce delay and embarrassment to creditors, and says that the Court had never undertaken to restrain a Sheriff in a like case.

He quotes no authority where an injunction wss repressed, and omits reference to the English cases where it was the constant practice to restrain execution, as appears by the authorities quoted. This decision was made in 1817, and not in a Court of final appellate jurisdiction, and though it has been the subject of earnest criticism by Mr. Justice Story, and elaborate defense by Chancellor Kent, in the note to p. 75, 3 Kent's Com. (8th edition) yet no antecedent authority has been shown to maintain it, and the only one bearing upon the question, (Re Smith, 16 John. 102) is directly opposed to it in principle, and no direct approval even in New York could be adduced ; and the only subsequent case which could be found by the Chancellor, approving this decision, was Phillips *v.* Cook, (24 Wend. 389) already quoted, which was a case at law, not involving the powers of a Court of Chancery.

BALDWIN, J., delivered the opinion of the Court—TERRY, C. J., and FIELD, J., concurring.

Several errors are assigned by Burton and Blake, who are the appellants here. They are met, however, at the threshold, by the objection that they have no standing in Court, because the respondents' counsel say they are not parties to the record. We think the objection is not good. The petition was certainly a very irregular way to get them into the cause, but it is an irregularity of which the respondents cannot complain. The petition, though not entitled of the cause, was filed among the papers as a part of the record related to the subject matter of the suit, and was acted on by the Judge as a portion of the pleadings, and the final decree refers expressly to the injunction granted on the petition and in pursuance of its prayer, and makes that injunction perpetual. Being affected directly by the judgment, it certainly does not lie in the mouth of the plaintiff below to say the

defendants, Burton and Blake, are not parties to it and have no right of appeal.

It is contended that the cattle, etc., of the partnership is not the subject of levy and sale by the Sheriff, on an execution against Thompson, one of the partners.   We think the rule is otherwise.   The interest of one partner in partnership property is such an estate under our statute as may be sold for his  debts ; it is a legal estate in chattels. It is true that, as between the partners, the interest of each is only the residuum of the property left after the settlement of the firm debts ; and that the rights of firm creditors and the several partners are paramount to the claims of separate creditors of the firm.

But this interest of the partner thus defined, is held by the weight of authority subject to levy for his debts.   Story on Partnership, (sec. 263) thus states the rule : " In cases of this sort, therefore, the real position of the parties, relatively to each other, seems to be this : The partnership property may be taken in execution upon a separate judgment and execution, against one partner ; but the Sheriff can only seize and sell the interest and right of the judgment partner therein, subject to the prior rights and liens of the other partners and the joint creditors therein.   By such seizure the Sheriff acquires a special property in the goods seized ; and the judgment creditor himself may, and the Sheriff, also, with the consent of the judgment creditor, may file a bill against the other partners for the ascertainment of the quantity of that interest, before any sale is actually made under the execution. The judgment creditor, however, is not bound, if he does not choose, to wait until such interest is so ascertained, but he may require the Sheriff immediately to proceed to a sale, which order the Sheriff is bound by law to obey.   In the event of a sale, the purchaser at the sale is substituted to the rights of the execution partner, *quoad* the property sold, and becomes a tenant in common thereof; and he may file a bill, or a bill may be filed against him by the other partners, to ascertain the quantity of interest which he has acquired by the sale."

Chancellor Kent held in Moody v. Payne, (2 Johns. Ch. 548) that an injunction should not be granted to restrain a sale by the Sheriff, upon the ground that no harm is thereby done to the other partners ; and the sacrifice, if any, is the loss of the judgment debtors only.   Mr.

Jones *v.* Thompson.

Justice Story, (on Part. sec. 264) remarking upon this decision, says: " This does not seem to be a sufficient ground upon which an injunction should be denied.   If the debtor partner has, or will have upon a final adjustment of the accounts, no interest in the partnership funds, and if the other partners have a lien upon the funds, not only for the debts of the partnership, but for the balance ultimately due to them, it may most materially affect their rights whether a sale takes place or not.   For it may be extremely difficult to follow the property into the hands of the various vendees ; and the lien of the other partners may, perhaps, be displaced, or other equities arise by intermediate *bona fide* sales of the property in favor of the vendees, or other purchasers without notice ; and the partners may have to sustain all the chances of any supervening insolvencies of the immediate vendees.   To prevent multiplicity of suits and irreparable mischiefs, and to insure an unquestionable lien to the partners, it would seem perfectly proper, in cases of this sort, to restrain any sale by the Sheriff."

But this doctrine has no application to this case.   The petition makes no case fit for the rule here laid down.   It may safely be conceded that if the judgment debtor be indebted to the firm, or the firm be so indebted that on a settlement the debtor partner would not be entitled to any share of the common property, that the other partner might intervene to prevent a sale of the partnership assets.   But it would be a great hardship, and would lead to enormous frauds, if, merely because the account was unsettled and something due, however small the amount, the creditor should be postponed until an account was taken.   No man with a small debt against such debtor, could afford to prosecute his claim ; and the effect would be, in almost every case, to prevent or postpone a sale at the suit of the separate creditor.

The petition does not show any facts upon which the injunction was properly granted.

The decree shows a balance of some $7,000 due from the defendant to the plaintiff ; but this balance the decree itself shows is wrong.   The amount is given as the excess of receipts of firm money over expenditures ; but for this excess the defendant was only responsible to his partner for one-half, not for the whole.   The bill shows a great num

ber of cattle, sheep, etc., of a value largely exceeding this comparatively small debt due the plaintiff. The appellants are interested in correcting this error, as the property, if sold by them, would be subject to this claim.

The decree is also erroneous in ordering a private sale of the firm property. The selling property of this sort in this way, is dangerous as a precedent, and liable to great abuse in practice. Only so much of the property as is necessary to pay the firm debts should be ordered to be sold, and the balance divided.

These principles being decisive of this case on the merits, it is not necessary to notice minor points.

The decree of the Court below is reversed, the order for injunction dissolved, and the cause remanded for a decree in pursuance of this opinion.